**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| STANLEY ANDREWS, DONALD C. CLARK, on Their Own Behalf And on Behalf of The Class Defined Herein, | ) ) ) | Case No. _____ |
| | ) | Judge _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Notice of Removal of Civil Action (Class Action Fairness Act Jurisdiction, 28 U.S.C. §§ 1332, 1441, 1446, and 1453)** |
| NATIONWIDE MUTUAL INSURANCE COMPANY and NATIONWIDE LIFE INSURANCE COMPANY, | ) ) ) ) | **[Removed from Court of Common Pleas, Cuyahoga County, Ohio, Case No. CV 11 756463]** |
| Defendants. | ) ) | |

**NOTICE OF REMOVAL OF CIVIL ACTION**

PLEASE TAKE NOTICE THAT defendants NATIONWIDE MUTUAL INSURANCE

COMPANY and NATIONWIDE LIFE INSURANCE COMPANY (collectively "Nationwide"

or "Defendants"), have removed the action entitled *Stanley Andrews and Donald C. Clark, on*

*their own behalf and on behalf of the class defined herein vs. Nationwide Mutual Insurance*

*Company and Nationwide Life Insurance Company*, filed in the Cuyahoga County Court of

Common Pleas, of the State of Ohio, case number CV 11 756463 (the "Complaint"), to the

United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28

U.S.C. §§ 1332(d), 1441, 1446, and 1453.  Attached as Exhibit 1 is a true and correct copy of the May 31, 2011 Class Action Complaint.  Attached as Exhibits 2 & 3 are true and correct copies of Stanley Andrews and Donald C. Clark's (collectively "Plaintiffs") Summons and Service of Process to Nationwide.  Attached as Exhibit 4 is a true and correct copy of all other process, pleadings, and orders that have been served upon Nationwide.  *See* 28 U.S.C. §1446(a).

Pursuant to 28 U.S.C. § 1446(d), upon filing this Notice of Removal, Nationwide will promptly serve a copy to all adverse parties in this action and file written notice of removal and a copy of this Notice of Removal with the clerk of the Cuyahoga County Court of Common Pleas.

## I.    BACKGROUND

1.    Plaintiffs filed this action against Nationwide on May 31, 2011 in the Court of Common Pleas for Cuyahoga County, in the State of Ohio.  (*See* Compl. at 1.)  Nationwide was served with the Summons and Complaint in this matter on June 8, 2011.

2.    The Plaintiffs purport to represent a "nationwide" class of "thousands, if not millions of Class Members."  (*Id.* ¶ 43; *see id.* ¶ 39.)

3.    As defined by the Plaintiffs, the purported class includes individuals who hold Nationwide life insurance policies that are "currently in force or have been wrongfully cancelled … prior to the payment of death benefits," were held within 15 years of the commencement of the suit, and "where the insureds' age at anytime during which the policies were in force actuarially indicated a 70% probability of death, or such lesser probability of death as the Court should order."  (*Id.* ¶ 37.)  Plaintiffs also purport to represent a "subclass" of Nationwide policyholders — i.e., a subset of the "Class" — consisting of policyholders "who are actually deceased" and allegedly still owed death benefits from Nationwide.  (*Id.*)

4.    Plaintiffs allege "upon information and belief" that Nationwide has "failed to make reasonable and necessary attempts to determine" whether the class members are "actually

deceased." (*Id.* ¶¶ 20, 37).  The Complaint alleges that Nationwide is required to at least annually compare the names and information of the class members with the Social Security Administration's Death Master File ("DMF") to determine if members of the class are deceased. (*Id.* ¶¶ 21, 27.)  Then, according to the Complaint, Nationwide must locate the beneficiaries of the policy held by the class member and pay death benefits to the beneficiaries "even in the absence of a submission of proof of death" or "proof of claim." (*Id.* ¶¶ 27, 28.)  The Complaint further alleges that Nationwide's failure to run an annual search of the DMF has resulted in Nationwide "improperly hold[ing] death benefit proceeds for those beneficiaries and payees of the Class Members" who are in fact deceased.  (*Id.* ¶ 20.)

5.      Plaintiffs' Complaint seeks broad monetary and nonmonetary relief.  Despite the fact that they are, in fact, still alive, Plaintiffs seek to recover, on their own behalf and on behalf of the purported "subclass" of deceased Class members, an unspecified amount of damages for "unpaid proceeds" from Nationwide life insurance policies "plus appropriate interest, reasonable fees, and such other and further relief as may be equitable." (*Id* ¶ 57.)  The Complaint also seeks mandatory injunctive relief and declaratory relief ordering that Nationwide at least annually "determine which of the Class Members are deceased" and "pay the proceeds of the insurance contract, without first requiring further notice of death" or "proof of loss claim."  (*Id.* ¶ 49; *see id.* at 13 ¶ 2.)  Plaintiffs further allege that they are entitled to "actual damages, punitive damages, costs, reasonable attorneys' fees, and pre and post judgment interest at the highest rate that the Defendants have historically enjoyed." (*Id.* at 13 ¶ 3.)

## II.     THIS COURT HAS ORIGINAL JURISDICTION OVER THIS ACTION UNDER THE CLASS ACTION FAIRNESS ACT

6.      This Notice of Removal is based on the Class Action Fairness Act ("CAFA"), codified in relevant part in 28 U.S.C. §§ 1332(d) and 1453.  The district courts have original

jurisdiction of a class action where (1) the proposed class contains 100 members or more, 28 U.S.C. §1332(d)(5)(B); (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A); and (3) "the matter in controversy exceeds the sum or value of $5,000,000."  28 U.S.C. §§1332(d)(2).  The party seeking removal must file a notice of removal within 30 days after service.  *See* 28 U.S.C. §1446(b).  As demonstrated below, each of these requirements is satisfied, providing this court with original jurisdiction over this action.

### A.    The Class Action Contains At Least 100 Members

7.    CAFA requires that the proposed class contain at least 100 members.  On its face, Plaintiffs' Complaint expressly provides that it is a "Class Action Complaint." (Compl. at 1; *id.* ¶¶ 36-43.)  The Complaint also alleges that the proposed class contains "thousands, if not millions of Class Members."  (*Id.* ¶ 43.)

8.    Nationwide has examined its records and has confirmed that there are substantially in excess of 100 potential members in the class of policyholders that the Plaintiffs purport to represent.  (July 6, 2011 Dec. of Jeffrey D. Stein ¶ 5 (Ex. 5).)  Accordingly, CAFA's requirement that the proposed class have at least 100 members is satisfied here.

### B.    At Least One Plaintiff Is A Citizen Of A State Different Than One Defendant

9.    CAFA requires only minimal diversity between the proposed plaintiff class and the defendants.  Stated differently, all that is required is that "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).

10.    Defendants Nationwide Mutual Insurance Company and Nationwide Life Insurance Company are both Ohio corporations with their principal places of business in Ohio. (Compl. ¶¶ 4, 8.)  Plaintiffs allege that they seek to represent a "nationwide class" of individuals that is not limited to the state of Ohio.  (*Id.* ¶ 39.)  Nationwide's records indicate that at least one

4

member of the purported class defined in the Complaint is a citizen of a state other than Ohio. (Stein Decl. ¶ 5.)  Thus, CAFA's minimal diversity requirement is met here.[1]

### C.  The Amount In Controversy Exceeds $5 Million

11.  Under CAFA, the district courts have original jurisdiction over class actions "in which the matter in controversy exceeds the sum or value of $5,000,000."  28 U.S.C. §1332(d)(2).

12.  A defendant seeking to remove an action to federal court need not admit liability in order to meet the amount in controversy.  Rather, the removing party must only show "by a preponderance of the evidence" that "the *allegations in the complaint* at the time of removal satisfy the amount in controversy requirement."  *Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 769-70 (6th Cir. 2009) (emphasis added).

13.  On its face, Plaintiffs' Complaint does not quantify the damages that they seek to recover, either individually or on behalf of the purported class, in this lawsuit.  Rather, the Complaint seeks monetary damages for allegedly "unpaid [life insurance] proceeds, plus appropriate interest, reasonable fees and expenses, and such other and further relief as may be equitable."  (Compl. ¶ 57.)  Under CAFA, the claims of all of the individual class members are "aggregated" to determine whether the amount in controversy threshold is met.  28 U.S.C. §1332(d)(6).

14.  Nationwide has examined its records and determined that the amount in controversy implicated by Plaintiffs' class action complaint is substantially in excess of the $5,000,000 threshold required by CAFA.  As described more fully in the accompanying

---

[1] The Court must decline to exercise jurisdiction if more than two thirds of the plaintiff class and the "primary defendants" are "citizens of the State in which the action was originally filed."  28 U.S.C. §1332(d)(4)(B).  Here, less than two thirds of the individuals in the purported class are citizens of Ohio.  (Stein Decl. ¶ 5.)

Declaration of Jeffrey D. Stein, this conclusion is evident both from the searches of the DMF that Nationwide has already performed (prior to the filing of this lawsuit) — and the additional searches that Plaintiffs' Complaint seeks to compel Nationwide to perform in perpetuity.

15.     Contrary to the conclusory allegations in the Complaint pleaded solely on "information and belief," Nationwide currently performs — and began performing prior to the initiation of this lawsuit — annual searches of the DMF to determine whether any of its active life insurance policyholders are shown in the database as potentially deceased.  (Stein Decl. ¶ 6.) Nationwide then endeavors to locate and contact the beneficiaries of these potential "matches" of the DMF, confirm the policyholder's and beneficiary's eligibility for the receipt of death benefits and, where all contractual requirements have been met, pay the contractual death benefit to the beneficiary.  (*Id*. ¶ 7.)

16.     In 2010, Nationwide performed searches to compare its entire book of active life insurance policies to the DMF to identify any policyholders who had died in any prior years without a claim being submitted.  (*Id*.)  This search resulted in approximately 1,016 exact or near exact matches, with an associated aggregate death benefit of approximately $5 million.  (*Id*.) Nationwide then began the process of reviewing each match to locate the policy beneficiary, verify the policyholder's and beneficiary's eligibility for death benefits under the policy and, where all policy requirements were found to be satisfied, tender the policy death benefit to the beneficiary.  (*Id*.)  Despite diligent efforts by Nationwide, there are approximately 230 active policies resulting from the 2010 searches of the DMF, with an aggregate death benefit of approximately $826,000, for which Nationwide has not yet been able to locate the beneficiary or otherwise complete the claim process.  (*Id*.)  These active policies, and their associated benefits,

are potentially implicated by the broad monetary relief requested in Plaintiffs' class action Complaint.

17.     In addition to its active life insurance policies, Nationwide reviews life insurance policies that have lapsed in the past month to determine if any of these policyholders are listed on the DMF.  (*Id.* ¶ 8.)  Then, using a process similar to the one outlined above, Nationwide endeavors to contact the beneficiaries of these potential matches to determine if death benefits may be owed despite the policy lapse.  (*Id.* ¶ 9.)

18.     In 2011, Nationwide performed searches of the DMF to look for policyholders whose policies had lapsed.  (*Id.*)  A search of the DMF for lapsed policies for approximately the past 15 years in 34 states resulted in roughly 177 potential matches with an aggregate death benefit of about $2.8 million.  (*Id.*)  As with its active policies, Nationwide then began the process of reviewing each of the potential matches to locate the policy beneficiary, verify the policyholder's and beneficiary's eligibility for death benefits under the policy and, where all policy requirements were found to be satisfied, tender the policy death benefit to the beneficiary. (*Id.*)  Despite diligent efforts by Nationwide, there are approximately 17 out of the 177 lapsed policies, with an aggregate death benefit of approximately $1,228,000, for which Nationwide has not yet been able to locate the beneficiary or otherwise complete the claim process.  (*Id.*)  These lapsed policies, and their associated benefits, are potentially implicated by the broad monetary relief requested in Plaintiffs' class action Complaint.

19.     In addition to monetary damages, Plaintiffs also request mandatory injunctive relief ordering that Nationwide take the affirmative step to "no less than annually, make reasonable inquiry to determine the life-status of Class Members."  (Compl. ¶ 46.)

20.     The potential cost of complying with an injunction is properly considered in determining the amount in controversy.  *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010).  As described above, Nationwide is already performing annual searches of its active life insurance policyholders to "determine the life status" of all policyholders, including the purported class members. *See supra* ¶¶ 15, 16. Nationwide is also performing a monthly search of all policies that have lapsed in the preceding month.  *See supra* ¶¶17, 18.

21.     These searches of the DMF, which Nationwide is already conducting, cost Nationwide approximately $10,200 per year.  (Stein Decl. ¶ 10.)  Plaintiffs' Complaint demands that Nationwide continue to perform these searches — together with additional actuarial work to determine which policyholders are at least 70% likely to be deceased — on a "no less than annual[]" basis for perpetuity.  (Compl. ¶ 46.)  Thus, the potential cost of complying with this perpetual injunction alone satisfies CAFA's amount in controversy requirement.

22.     But Plaintiffs' Complaint does not just demand that the searches be run.  Plaintiffs also demand additional declaratory and monetary relief requiring that Nationwide must, on an annual basis, "determine which of the Class Members are deceased" and "pay the proceeds of the insurance contracts, without first requiring further notice of death."  (*Id.* ¶ 49.)

23.     "[F]or actions seeking a declaratory judgment, we measure the amount in controversy by 'the value of the object of the litigation.'"  *Northup Props. Inc.*, 567 F.3d at 770 (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).  "[W]hen assessing the jurisdictional amount in declaratory relief cases, federal courts should consider the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants."  *Rasberry v. Capitol County Mut. Fire Ins. Co.*, 609 F. Supp. 2d

8

594, 601 (E.D. Tex. 2009) (internal quotations & citation omitted); *see also* S. Rep. No. 109-14, at 43 (reporting the purpose and intent of CAFA upon passing it and stating that under CAFA "in assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants").

24.     Here, if the declaratory and monetary relief demanded in Plaintiffs' Complaint is granted, Nationwide would be required — in perpetuity — to perform annual searches comparing its active and lapsed life insurance policies to the DMF and "pay the proceeds of the insurance contract, without first requiring notice of death."  (Comp. ¶ 49.)  That broad relief (which runs contrary to important policy terms and Ohio insurance law) potentially implicates all of Nationwide's existing life insurance policies.  Although Plaintiffs' Complaint purports to limit the policies that must be searched to those where the policyholder has a more than 70% likelihood of being deceased, all of Nationwide's active life insurance policies will — over the perpetual term of the relief demanded by Plaintiffs — fit this description as policyholders age.

25.     Nationwide currently has approximately 992,000 active life insurance policies, with an associated aggregate death benefit over $100 billion.  (Stein Decl. ¶ 11.)  Nationwide's experience from the 2010 active policy searches of the DMF shows that since 2008 approximately 100 policyholders die each year on average without a claimant or beneficiary submitting a claim within twelve months of the policyholder's death.  (*Id.* ¶ 12.)

26.     The average death benefits for the 1,016 exact or near exact matches from Nationwide's 2010 active policy search of the DMF is approximately $6,961.  (*Id.* ¶ 13.)  But the average death benefit (including interest, paid up additions, etc.) paid on a Nationwide life

insurance policy for claims initiated by a beneficiary or other claimant for the past 3 years (2008 through 2010) is approximately $34,000.  (*Id*. ¶ 14.)

27.     Thus, if (contrary to the plain language of the policy and Ohio law) the broad declaratory relief sought by the Plaintiffs were granted, Nationwide would be required to pay, indiscriminately, hundreds of thousands (and perhaps millions) of dollars a year in death benefits.  Nationwide would be required to make these payments without knowledge of the conditions surrounding the death, without any potential beneficiary or claimant making a claim, and "without requiring further notice of death."  (Compl. ¶ 49.)  The "relief and benefits" would "logically flow" year after year to all of the "thousands, if not millions" of individuals who are currently members of the proposed class and to those Nationwide policyholders who age to the point where their likelihood of mortality is 70% or higher or actually die.  *See Rasberry*, 609 F. Supp. 2d at 601 ("If Rasberry's proposed class action succeeds, one realistic measure of the value of all relief and benefits that could logically flow from the granting of the declaratory relief sought by the claimants is the remaining limits on the [insurance policies at issue] considering that Rasberry alleges that [the Defendant] systematically mishandled all [of the relevant] claims."); *see also Miller v. Liberty Mut. Group*, 97 F. Supp. 2d 672, 675-76 (W.D. Pa. 2000) (concluding that the amount in controversy for a declaratory judgment action was met where the maximum value of the insurance policy at issue exceeded the amount in controversy threshold). The "relief and benefits" that would flow from a declaratory judgment far exceed the threshold amount in controversy under CAFA.  Accordingly, CAFA's amount in controversy requirement is definitively met here.

### D.     Nationwide Timely Filed This Notice Of Removal

28.     Federal law requires that any defendant desiring to remove a civil action from a state court to a federal district court must file a notice of removal within thirty days after service.

10

*See* 28 U.S.C. § 1446(b).  Plaintiffs served Nationwide on June 8, 2011.  (Exs. 2 & 3.) Nationwide filed this Notice of Removal on July 6, 2011.  Accordingly, this Notice of Removal has been filed within thirty days of service, and therefore this Notice of Removal is timely.

## III.    CONCLUSION

For the foregoing reasons, Nationwide removes this action from the Cuyahoga County Court of Common Pleas, of the State of Ohio, case number CV 11 756463, to the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453.

Dated:  July 6, 2011                          Respectfully submitted,

                                   */s/ Dustin B. Rawlin*
                                   Robert S. Faxon (Ohio Bar No. 0059678)
                                   Dustin B. Rawlin (Ohio Bar No. 0072870)
                                   JONES DAY
                                   North Point
                                   901 Lakeside Avenue
                                   Cleveland, Ohio  44114-1190
                                   Telephone:   (216) 586-7104
                                   Facsimile:   (216) 579-0212
                                   rfaxon@jonesday.com
                                   dbrawlin@jonesday.com

                                   Daniel F. Attridge, P.C. (*pro hac* forthcoming)
                                   Thomas A. Clare, P.C. (*pro hac* forthcoming)
                                   KIRKLAND & ELLIS LLP
                                   655 Fifteenth Street, N.W., Suite 1200
                                   Washington, D.C.  20005
                                   Telephone:   (202) 879-5000
                                   Facsimile:   (202) 879-5200
                                   daniel.attridge@kirkland.com
                                   thomas.clare@kirkland.com

                                   *Attorneys for Nationwide Mutual Insurance Company and Nationwide Life Insurance Company*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Notice Of Removal Of Civil Action was filed electronically on this 6th day of July, 2011.  Notice of this filing will be sent to, and may be accessed by, all parties by the Court's electronic filing system.

Dennis E. Murray, Sr., Esq. (0008783)
Florence J. Murray, Esq. (0080292)
Donna A. Evans, Esq. (0072306)
John T. Murray, Esq. (0008793)
Dennis E. Murray, Jr., Esq. (0038509)
Margaret M. Murray, Esq. (0066633)
Leslie O. Murray, Esq. (0081496)
Amanda L. Aquino, Esq. (0084902)
MURRAY & MURRAY CO., L.P.A.
111 E. Shoreline Drive
Sandusky, Ohio 44870
Telephone:  (419) 624-3000
Facsimile:  (419) 624-0707
dms@murrayandmurray.com
tjrn@murrayandmurray.com
dae@murrayandmurray.com
iotm@murrayandmurray.com
dmj@murrayandmurray.com
mmm@murrayandmurray.com
lom@murrayandmwTay.com
amanda.aquino@murrayandmurray.com

J.M. Kelley III, Esq. (0061990)
Arthur M. Elk, Esq. (0031222)
David J. Elk, Esq. (0000789)
ELK & ELK Co., Ltd.
6105 Parkland Blvd.
Mayfield Heights, Ohio 44124
Telephone:  (440) 442-6677
Facsimile:   (877) 355-1355
ikelley@elkandelk.com
aelk@elkandelk.com
delk@elkandelk.com

*/s/ Dustin B. Rawlin*
Dustin B. Rawlin (Ohio Bar No. 0072870)