**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Stanley Andrews,** *et al.***,** | ) | **CASE NO. 1:11 CV 1379** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Nationwide Mutual Insurance Co.,** *et al.***,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |

<u>**INTRODUCTION**</u>

This matter is before the Court upon Plaintiff's Motion for Remand to State Court (Doc. 8). This is a class action involving the payment of death benefits. For the reasons that follow, the motion is GRANTED.

<u>**FACTS**</u>

Plaintiffs, Stanley Andrews and Donald C. Clark, filed this lawsuit in state court on behalf of themselves and other similarly situated individuals, against defendants, Nationwide Mutual Insurance Company and Nationwide Life Insurance Company (collectively "defendants").

1

Plaintiff Andrews is 77 years old and plaintiff Clark is 81 years old.  Plaintiffs allege that, based on the actuarial tables, there is 76% and 87% probability that they should not be alive. Plaintiffs further allege that, "while the plaintiffs are alive, nevertheless, ...many of their class members are deceased, and as to such deceased members policy proceeds are owing...."  (Compl. ¶ 19).  Generally speaking, the complaint alleges that defendants fail to make a determination as to whether their insureds are still alive.  As a result, defendants improperly retain death benefits. According to plaintiffs, defendants should inquire on at least an annual basis as to whether they owe death benefits to any insured where the probability of death of the insured is at least 70%. The complaint contains four claims for relief.  Count one seeks a mandatory injunction.  Count two is a claim for declaratory relief.  Count three is a claim for failure to act in good faith and to engage in fair dealings and count four is a claim for unjust enrichment.

Defendants removed this matter to this Court based on the diversity jurisdiction provisions of the Class Action Fairness Act ("CAFA").  Plaintiffs move to remand this matter to state court and defendants oppose the motion.

**ANALYSIS**

Defendants removed this case alleging jurisdiction under the Class Action Fairness Act of 2005 (CAFA), which expands this Court's diversity jurisdiction for certain class actions. Under this statute, district courts have original jurisdiction over any civil action which is a class action in which 1) any member of the class of plaintiffs is a citizen of a State different from any defendant and 2) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Additionally, this Court has jurisdiction only where the number of members in the class is at least 100.  28 U.S.C. § 1332(d)(5)(B).

Plaintiffs do not dispute the diversity of the parties herein or that the class is at least 100 in number.  Rather, the parties dispute only whether the amount in controversy has been met.

Plaintiffs argue that defendants cannot establish that the amount in controversy exceeds $5,000,000.   According to plaintiffs, defendants' notice of removal identifies three components of damages: (1) $826,000, which constitutes the face value of active life insurance policies for which the insured has been determined to be deceased, (2) $1,228,000, which constitutes the value of lapsed insurance policies during the past 15 years for which the insured has been determined to be deceased; and (3) the $10,200 annual cost to conduct yearly searches of the Death Master File ("DMF") for active life insurance policyholders and monthly searches for all lapsed policies.  Defendants argue that the injunction plaintiffs seek is indefinite and perpetual and, as such, the amount in controversy is satisfied by category three alone.  Plaintiffs claim that these components do not collectively exceed the $5,000,000 amount in controversy necessary for federal jurisdiction.   According to plaintiffs, the Court should limit the annual cost associated with the injunctive relief request to a 30-year period, *i.e.*, the time period insurers generally use for "pricing exercises."

Defendants argue that plaintiffs do not challenge the inclusion of the first two categories toward the amount in controversy.  With respect to the third category, defendants argue that the complaint is not limited to a 30-year injunction and, as such, the Court should not impose a limitation on the monetary value of the injunctive relief.  Defendants also argue that plaintiffs fail to address a major component of the damages.  According to defendants, the imposition of the injunctive relief sought by plaintiffs would require defendants to alter their business practices.  Defendants claim that plaintiffs are asking the Court to ignore the notice provision in

3

defendants' policies.  If the injunctive relief is obtained, defendants' entire book of business would be impacted as defendants would no longer be able to include notice provisions in their policies.  Defendants claim that, on average, 100 insureds die each year without making a claim. The average death benefit for these claims would be $6,961.  Even applying plaintiffs' suggested 30-year term, the value of the relief sought would total $20,883,000, which is far in excess of the $5,000,000 amount in controversy.

In reply, plaintiffs argue the defendants already perform searches of the DMF.  Thus, this cost should not be included in determining the amount in controversy.  Plaintiffs also claim that New York now requires life insurers to search the DMF or another competent database for deceased insureds.  Plaintiffs also dispute that the amount in controversy should include the $6,961 average death benefits for the 100 insureds a year who die without filing a notice with defendants.  According to plaintiffs, this number makes no sense based on the previous searches conducted by defendants.  Plaintiffs point out that defendants discovered 1500 policies over the past ten years for which no proof of death was provided.  Of those policies, defendants paid death  benefits on all but 230.  Thus, defendants rely on overinflated numbers in calculating the amount in controversy.  In addition, plaintiffs argue that defendants are required to set reserves for these amounts and place money in the state's unclaimed funds account.  Defendants fail to offer any explanation or analysis as to the amount of benefits ultimately retained by defendants. According to plaintiffs, the amount of money that is never claimed is what this Court should consider in determining the amount in controversy.

The removing defendant has the burden to prove diversity jurisdiction by a preponderance of the evidence.  *Hayes v. Equitable Energy Resources Co*., 266 F.3d 560, 572

4

(6th Cir. 2001).  More specifically, the Sixth Circuit "places a burden on a defendant seeking to remove an action to federal court to show by a preponderance of the evidence that the amount in controversy requirement has been met."   *Id.* (citing  *Gafford v. General Electric Company*, 997 F.2d 150, 158 (6th Cir. 1993) ).  However, "[t]his standard does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement.  Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages."  *Id.*  In cases seeking injunctive or declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010)(*quoting Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).  Generally speaking, the amount in controversy requirement may be established by demonstrating the costs of complying with an injunction.  *Cleveland Housing*, 621 F.3d at 560.

Upon review, the Court finds that defendants have not established a $5 million amount in controversy by a preponderance of the evidence.  Defendants provide the affidavit of Jeffrey Stein, who avers that defendants ran searches of their active and lapsed policies against the DMF.  The results of these searches indicated that there are approximately 230 active policies worth  $826,000 for which defendants received an "exact or near exact match" and for which defendants could not locate the policy beneficiary.   In addition, there are approximately 17 lapsed policies worth $1,228,000 that fit the same criteria.  Defendants ask the Court to include these dollar figures in the amount in controversy.   These dollar figures, however, are derived from searches of defendants' *entire* book of business.   Thus, these figures do not accurately represent the interests at stake in this case, as the number of policies at issue is far less than

5

defendants' entire book of business.[1]   For example, there is no indication as to how many of the

230 active policies and 17 lapsed polices were held by class members.  Nor is there any

indication as to the value of the class members' policies.

   In addition, the Court rejects defendants' argument that the cost of running searches *ad

infinitum* would itself exceed the jurisdictional amount.  Defendants provide evidence that the

cost to run the searches is $10,200 per year.  Defendants' argument ignores the simple fact that

the injunction could not, by definition, run *ad infinitum*.  Count one, which seeks mandatory

injunctive relief, asks the Court to order defendants to make reasonable inquiries as to the "life-

status of the *Class Members*."   Similarly, count two asks that the Court declare that defendants

must pay death benefits to "*Class Members...* without first requiring further notice of death."  On

the face of the complaint, the injunctive and declaratory relief is requested only on behalf of

"Class Members."  The class is defined generally as individuals who have policies that are

"currently in force" or have been "wrongfully canceled" and who held such policies "within the

period of time that commenced 15 years prior to the filing" of this lawsuit  Construing the class

definition as broadly as possible[2], the injunction could only last as long as the youngest person in

the class is alive.  Once the youngest person is deceased, the injunction would necessarily expire

as there would be no more records to search or benefits to pay.  The definition specifies that to

---

[1]  Defendants' analysis does not exclude from the calculations "young" policyholders who die and, therefore, would never be members of the class.

[2]  The Court is very careful to note that it is not opining as to the meaning of the class definition, which is not entirely clear.  Rather, the Court simply construes the definition as broadly as possible in order to determine whether defendants could even potentially satisfy the amount in controversy.

be a class member, an insured must have a policy that is *currently in force* as of the filing of the lawsuit.  Thus, assuming *arguendo* that an infant purchased an insurance policy just prior to the filing of the lawsuit, the individual would have to live just over 490 years in order to meet the $5,000,000 amount in controversy.[3]  Obviously, such a scenario is impossible.  Accordingly, defendants do not establish, by a preponderance of the evidence, that the cost to run DMF searches will satisfy the amount in controversy requirement.

The Court further finds that defendants fail to establish that the cost of paying out claims for insureds who do not provide notice of death exceeds the jurisdictional amount.  Defendants fail to provide evidence as to the amount of alleged damages which will result from *this* litigation.  Rather, defendants argue that they will be forced to change their business practices for all of their insureds located anywhere on a going forward basis.  This Court disagrees.  While "business practice" costs may be included in determining the amount in controversy, the Court rejects defendants' argument in this case.  Insurance is a highly regulated industry and state regulations may vary widely.  In this case, plaintiffs appear to seek an order declaring that a death notice provision violates Ohio's covenant of good faith and fair dealing (Compl. ¶ 26).  This Court cannot say that defendants have established that a ruling in this case would require them to change their business practices nationwide.  Here, defendants provide information related to their entire business practice and do not provide any information specific to this case.  For example, defendants provide a general statement that 100 insureds die each year and fail to

---

[3]      The Court arrived at this number by dividing the amount in controversy by the cost per year to run the searches.  Even if the Court considered defendants' alleged damages of $2,054,000, in order to exceed the jurisdictional amount, the "youngest" plaintiff would have to live over 288 years.

7

make a claim, but do not supply the Court with evidence of how many of these insureds fall

within the class definition.   For example, some of these insureds may be too young to be class

members.  The same holds true with regard to the amount of the death benefit payable.

Defendants make no effort to exclude from their  calculation the amount of death benefits

payable to insureds who are not class members.  As such, the Court finds that defendants fail to

establish that the amount in controversy is satisfied.

Having concluded that defendants fail to establish that the amount in controversy exceeds

$5 million, the Court need not reach plaintiff's alternative request that the Court decline

discretionary jurisdiction.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Remand to State

Court.

IT IS SO ORDERED.


  /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/26/11

8